UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| CURTIS L. MCBRIDE, | |
| Plaintiff, | |
| v. | CAUSE NO. 3:23-CV-261-JD-MGG |
| PAM BANE, et al., | |
| Defendants. | |

OPINION AND ORDER

Curtis L. McBride, a prisoner without a lawyer, filed a complaint against ten defendants. ECF 1. "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quotation marks and citations omitted). Nevertheless, under 28 U.S.C. § 1915A, the court must review the merits of a prisoner complaint and dismiss it if the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief.

On June 21, 2021, an institutional shakedown was conducted at Indiana State Prison ("ISP"). ECF 1 at 4. Following the shakedown, ISP was placed on lockdown and McBride was moved to a cold, unsanitary cell in D-Cellhouse where he was ordered to strip down to his boxer shorts, socks, and t-shirt, and sleep on a mat. *Id*. He asked custody staff for his blood pressure medication as well as a sheet and blanket. *Id*.

McBride asserts he was denied these items, but he has not identified any defendant responsible for denying him the items. *Id.*

The next day, on June 22, 2021, McBride was moved back to his original cell, 320-East, in C-Cellhouse. *Id.* Upon entering the cell, he noticed the light fixture had been replaced; however, there were dead roaches and roach eggs on the area of the wall where the old light fixture had been located. *Id.* He asked custody officers to call biohazard staff to remove the dead roaches and roach eggs, but his request was denied. *Id.* at 4-5. McBride asked for gloves and towels to clean the wall, but those items were also denied. *Id.* He was given a small amount of a cleaning chemical and used his face towel to clean his cell. *Id.* at 5. McBride has not identified any defendant responsible for denying his requests. *Id.*

After cleaning his cell, McBride noticed that some of his personal items were missing. *Id.* at 5. These items included his legal and policy papers, writing paper, food, blood pressure medication, mask, religious materials, headwear, and underwear. *Id.* McBride asserts that Officers J. Hanson and D. Bodwick confiscated these items when they searched his cell. *Id.*

On July 20, 2021, McBride was told to pack up his personal property because he was being moved to D-Cellhouse. *Id.* at 5. He was being placed in disciplinary segregation because a knife was found in his cell, 320-East, during the shakedown and lockdown in June. *Id.* As McBride was being escorted to D-Cellhouse, he saw Assistant Warden Dawn Buss and told her he had been written up for possessing a knife and, if a knife had been found in his cell, it must have been in an area that he could not access.

*Id*. at 5-6. He explained he was escorted by a custody officer each time he was moved to and from his cell in C-Cellhouse during the lockdown. *Id*. at 6.

After he was moved to D-Cellhouse on July 20, McBride was placed in a cell and only given his mat. *Id*. He was in the cell for six days and never received his property bag. *Id*.

McBride later filed a classification appeal asserting he could not have placed the knife in the area where it was found. *Id*. at 6. He was found not guilty of the knife charge because he did not have access to the outside of his cell during the lockdown and the knife was found inside of the door jamb located outside of his cell. *Id*. at 6-7. McBride signed reclassification papers and was told he would be moved from disciplinary segregation in D-Cellhouse to general population. *Id*. at 7.

On September 18, 2021, the power in McBride's cell in D-Cellhouse stopped working. *Id*. at 3. He informed Unit Team Manager Pamela Bane that he had a power outage and she told him the prison's maintenance staff would fix it within several days. *Id*. Because his power was not restored, McBride reported the situation to Correctional Officers Cross and Gill, who also contacted the prison's maintenance staff. *Id*. McBride also spoke with Lieutenants Draper and Lott, who informed him they had put in work orders to have his power restored. *Id*. He filed an emergency grievance asking Major Wardlow to move him to a different cell, but the grievance was returned to him. *Id*. On October 21, the power in McBride's cell was restored. *Id*.

On December 13, 2021, McBride was moved from D-Cellhouse to C-Cellhouse. *Id*. When McBride arrived at his new cell, he and Correctional Officer Escovito noticed

3

the cell did not have a working light or a place to screw in a lightbulb. *Id*. at 3-4. There was no cable cord and the power outlet appeared to be a fire hazard. *Id*. at 4. He refused to enter the cell because he believed it was unfit to live in. *Id*. However, Officer Escovito told McBride that, if he did not enter the cell, he would be sent to lockup. *Id*. He asserts he sat in a dark cell for days until his light fixture and power outlet were fixed. *Id*.

McBride initially asserts his Fourteenth Amendment rights were violated when he was housed in D-Cellhouse for almost five months on a disciplinary charge for which he was later found not guilty. The Fourteenth Amendment provides that state officials shall not "deprive any person of life, liberty, or property, without due process of law[.]" U.S. Const. amend. XIV, § 1. That said, due process is only required when punishment extends the duration of confinement or imposes "an atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). "[I]nmates have no liberty interest in avoiding transfer to discretionary segregation—that is, segregation imposed for administrative, protective, or investigative purposes." *Townsend v. Fuchs*, 522 F.3d 765, 771 (7th Cir. 2008) (citing *Lekas v. Briley*, 405 F.3d 602, 608–09 & 608 n.4 (7th Cir. 2005) ("[R]eassignment from the general population to discretionary segregation does not constitute a deprivation of a liberty interest.")); *see also DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) ("[P]risoners possess neither liberty nor property in their classifications and prison assignments."); *Healy v. Wisconsin*, 65 Fed. Appx. 567, 568 (7th Cir. 2003) ("[I]nmates do not have a protected liberty interest in a particular security classification.") (citing *Sandin*, 515 U.S. at 486).

Here, McBride does not allege the duration of his confinement was extended—he simply takes issue with his placement in D-Cellhouse. Although he asserts that his five-month stay in segregation was unjust because he was found not guilty of the knife charge, these allegations, without more, do not amount to an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Sandin*, 515 U.S. at 484; *Marion*, 559 F.3d at 697-98 & nn.2–3 (7th Cir. 2009) (collecting cases regarding timing); *Lekas*, 405 F.3d at 610–14 (even ninety-day placement in disciplinary segregation where inmate was "prohibited from participating in general population activities," deprived of contact with other inmates, and barred from "educational and work programs" did not trigger due process concerns). Therefore, McBride has not stated a plausible Fourteenth Amendment claim against any of the defendants pertaining to his confinement in D-Cellhouse.

McBride next asserts that his Eighth Amendment rights were violated because his cell in D-Cellhouse was without power for a month. The Eighth Amendment prohibits conditions of confinement that deny inmates "the minimal civilized measure of life's necessities." *Townsend*, 522 F.3d at 773. In evaluating an Eighth Amendment claim, courts conduct both an objective and a subjective inquiry. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The objective prong asks whether the alleged deprivation is "sufficiently serious" that the action or inaction of a prison official leads to "the denial of the minimal civilized measure of life's necessities." *Id*. (citations omitted). Although "the Constitution does not mandate comfortable prisons," *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981), inmates are entitled to adequate food, clothing, shelter, bedding,

hygiene materials, and sanitation, *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009); *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006). On the subjective prong, the prisoner must show the defendant acted with deliberate indifference to the inmate's health or safety. *Farmer*, 511 U.S. at 834. As the Seventh Circuit has explained:

> [C]onduct is deliberately indifferent when the official has acted in an intentional or criminally reckless manner, i.e., the defendant must have known that the plaintiff was at serious risk of being harmed and decided not to do anything to prevent that harm from occurring even though he could have easily done so.

*Board v. Farnham*, 394 F.3d 469, 478 (7th Cir. 2005) (citations and quotations omitted); *see also Reed v. McBride*, 178 F.3d 849, 855 (7th Cir. 1999) (when inmate complained about severe deprivations but was ignored, he established a "prototypical case of deliberate indifference.").

McBride has sued UTM Manager Bane, Correctional Officers Cross and Gill, Lieutenants Draper and Lott, and Major Wardlow asserting they were deliberately indifferent to his health and safety because they knew he was housed in a cell in D-Cellhouse without power for a month. While McBride alleges his power was not working, he does not allege that there was no light in his cell, or that he was left in total darkness. Therefore, McBride has not plausibly alleged Eighth Amendment claims against these six defendants. *See Hicks v. Lannoye*, No. 20-CV-505, 2021 WL 2454050, at *3 (E.D. Wisc. June 16, 2011) (collecting cases about when "inadequate lighting *on its own* constitutes a deprivation of minimal civilized measures of life's necessities" and concluding it requires a "significant amount of time in near total darkness").

6

McBride has also sued Correctional Officer Escovito asserting that he too was deliberately indifferent to his health and safety when he directed him to go into his new cell in C-Cellhouse. He states the cell appeared to be condemned because it did not have a working light and the power outlet was a fire hazard. While Officer Escovito knew about the cell's conditions, McBride has not explained how much light there was in the cell, or if it was completely dark. He also does not indicate why he believed the power outlet was a fire hazard or how long he was housed in the cell in this condition. Thus, McBride has not stated a claim against Officer Escovito.

Furthermore, to the extent McBride has sued Assistant Warden Buss, other than telling her that he had been written up on a knife charge and he was not guilty of the charge, he has not alleged she was personally involved in any of the events in this case. "Only persons who cause or participate in the violations are responsible." *George v. Smith*, 507 F.3d 605, 609 (7th Cir. 2007). "[P]ublic employees are responsible for their own misdeeds but not for anyone else's." *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir. 2009). He has not stated a claim against Assistant Warden Buss.

As a final matter, to the extent McBride may be seeking compensation for the loss of personal property he alleges Officers Hanson and Bodwick confiscated from his cell, a state tort claims act that provides a method by which a person can seek reimbursement for the negligent loss or intentional deprivation of property meets the requirements of the Due Process Clause by providing due process of law. *Hudson v. Palmer*, 468 U.S. 517, 533 (1984) ("For intentional, as for negligent deprivations of property by state employees, the state's action is not complete until and unless it

provides or refuses to provide a suitable post deprivation remedy.") Indiana's tort claims act (Indiana Code § 34-13-3-1 *et seq.*) and other laws provide for state judicial review of property losses caused by government employees and provide an adequate post deprivation remedy to redress state officials' accidental or intentional deprivation of a person's property. *See Wynn v. Southward*, 251 F.3d 588, 593 (7th Cir. 2001) ("[Plaintiff] has an adequate post deprivation remedy in the Indiana Tort Claims Act, and no more process was due."); *see also Higgason v. Morton*, 171 F. App'x 509, 512 (7th Cir. 2006) (Indiana Tort Claims Act precluded Indiana inmate's due process claim arising from the loss of property in his cell). McBride may not proceed against Officers Hanson and Bodwick.

This complaint does not state a claim for which relief can be granted. If McBride believes he can state a claim based on (and consistent with) the events described in this complaint, he may file an amended complaint because "[t]he usual standard in civil cases is to allow defective pleadings to be corrected, especially in early stages, at least where amendment would not be futile." *Abu-Shawish v. United States*, 898 F.3d 726, 738 (7th Cir. 2018). To file an amended complaint, McBride needs to write this cause number on a **Pro Se 14 (INND Rev. 2/20) Prisoner Complaint** form which is available from his law library. He needs to write the word "Amended" on the first page above the title "Prisoner Complaint" and send it to the court after he properly completes the form.

For these reasons, the court:

8

(1) GRANTS Curtis L. McBride until **February 9, 2024**, to file an amended complaint; and

(2) CAUTIONS Curtis L. McBride that, if he does not respond by the deadline, this case will be dismissed under 28 U.S.C. § 1915A without further notice because the current complaint does not state a claim for which relief can be granted.

SO ORDERED on January 11, 2024

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT